IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

TERRI EZELL, DONNA TOMPKINS, *
and JOAN B. WYNN,
             *

  Plaintiffs,
             *

vs.                 CASE NO. 4:11-CV-93 (CDL)
             *

JOHN DARR, Individually and in
his Official Capacity as *
Sheriff of Muscogee County, and
the COLUMBUS CONSOLIDATED *
GOVERNMENT
             *

  Defendants.
             *

O R D E R

INTRODUCTION

"If you shoot at a king, you must kill him."[1]  The modern

political version: "Make sure you pick the winner."  Plaintiffs

Terri Ezell ("Ezell") and Donna Tompkins ("Tompkins"), Muscogee

County deputy sheriffs, picked their boss, incumbent Muscogee

---

[1] This advice has been written in many forms through the years, but it has frequently been attributed to Ralph Waldo Emerson who wrote in his journal in 1843: "Never strike a king unless you are sure you shall kill him."  Ralph Waldo Emerson, *Journal U*, *in* IX *The Journals and Miscellaneous Notebooks of Ralph Waldo Emerson: 1843-1847*, at 15 (William Henry Gilman et al. eds., Belknap Press of Harvard University Press 1971).  An anecdote cited on occasion by Judge Oliver Wendell Holmes, Jr. tells the story of a young essayist who mentioned his essay criticizing Plato to Emerson.  Emerson responded with the remark, "When you strike at a King, you must kill him."  Oliver Wendell Holmes, *Ralph Waldo Emerson*, *in The Writings of Oliver Wendell Holmes* 56 (Riverside Press 1892).  Attribution for this phrase, however, cannot be given exclusively to Emerson.  Niccolò Machiavelli expressed a similar sentiment as far back as 1505 in chapter 3 of *The Prince*, paraphrased as "Never do an enemy a small injury."  Niccolò Machiavelli, *The Prince*, *in* XLIII *The World's Classics* 8 (Luigi Ricci trans., Grant Richards 1903).

County Sheriff Ralph Johnson ("Johnson"), when they actively campaigned for him in his reelection bid against challenger John Darr ("Darr").  Johnson lost, and Darr became their new boss. Ezell and Tompkins now claim that shortly after Darr took office, he retaliated against them for their political support of Johnson by demoting them.  They also maintain that their alleged demotions were motivated by their gender.  In addition to these demotion claims, Ezell contends that she was denied "comp time" because of her gender, and Tompkins and Plaintiff Joan B. Wynn ("Wynn") contend that they were denied a promotion because of their gender.[2]

Defendants move for summary judgment as to all of Plaintiffs' claims.  Defendants' motion (ECF No. 32) is granted in part and denied in part as follows.  Public employees do not forfeit their constitutional rights, but those rights are not absolute.  Although the First Amendment generally prohibits

---

[2] Ezell's and Tompkins's First Amendment claims are asserted pursuant to 42 U.S.C. § 1983 against Columbus Consolidated Government ("Columbus") and Darr in his official and individual capacities. Plaintiffs' gender discrimination claims are asserted against Columbus pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.,* and against Columbus and Darr, in his official and individual capacities, pursuant to § 1983 for violations of the Fourteenth Amendment.

Columbus is a consolidated government comprised of the city of Columbus, Georgia and Muscogee County, Georgia.  The Court treats Plaintiffs' claims against Darr in his official capacity as claims against Columbus.  *Keene v. Prine*, F. App'x 575, 578-79 (11th Cir. 2012) (per curiam) (concluding that a Georgia Sheriff is an arm of the county, not an arm of the state, when making personnel decisions). Defendants do not suggest that these official capacity claims should be treated otherwise.

discrimination based upon political affiliation, certain government employers can insist upon political loyalty as a legitimate job requirement. Under our First Amendment jurisprudence, the unique relationship between a sheriff and his deputies permits such a requirement. Therefore, to the extent that Plaintiffs allege that Sheriff Darr retaliated against them for supporting former Sheriff Johnson, that retaliation does not violate the First Amendment. Defendants are entitled to summary judgment on those claims.

Although the unique relationship between a sheriff and his deputies may limit deputies' rights under the First Amendment, that relationship does not authorize adverse employment actions motivated by gender. Because a genuine factual dispute exists as to whether gender was a motivating factor in Darr's decision not to promote Tompkins and Wynn and his decision to deny Ezell comp time, summary judgment is denied as to those claims. Defendants, however, are entitled to summary judgment on Ezell's and Tompkins's gender-based demotion/transfer claims because Ezell failed to produce sufficient evidence that gender was a motivating factor in Darr's decision to transfer her, and

Tompkins cannot establish that her transfer was an adverse employment action.[3]

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

## FACTUAL BACKGROUND

Viewed in the light most favorable to Plaintiffs, the record reveals the following.

Darr was a deputy sheriff under Johnson.  He decided to challenge his boss and ran against him in 2008.  Darr won the election and was sworn into office as Muscogee County Sheriff in January 2009.  Ezell and Tompkins, who had been employed as

---

[3] Ezell and Tompkins do not strongly contest that their Title VII demotion/transfer claims fail as a matter of law because of their failure to exhaust administrative remedies.

deputy sheriffs during Johnson's administration, publicly supported Johnson by putting a sign in their yards, attending campaign events, and sharing their endorsement of Johnson with other Sheriff's Office employees.[4]  Ezell Decl. ¶ 12, ECF No. 50; Tompkins Decl. ¶ 9, ECF No. 49.

## I.   2009 Reorganization

Under Johnson, the Sheriff's Office was organized with three main divisions:  administration, operations, and the county jail.  Administration and operations were headed by majors; the jail was headed by the jail commander.  Those officers, who were the highest ranking officers in the Sheriff's Office, made up the Sheriff's command staff and closely assisted the Sheriff with the management and direction of the Sheriff's Office.  Johnson's command staff included Chief Deputy Jimmy Griffin, Commander Ezell at the jail, Major Joe McCrea in administration, and Major Troy Culpepper in operations.[5]

Darr was not satisfied with the organization of the office or Johnson's command staff.  Darr Dep. 45:23-47:19.  He reorganized the Sheriff's Office along the following lines of responsibility:  (1) the county jail; (2) administration, which handled the front office, warrants, tracking registered sex

---

[4] Defendants contend that Darr had no specific knowledge about yard signs, but it is undisputed that Darr believed Ezell and Tompkins supported Johnson.  Darr Dep. 62:25-63:16, 124:8-125:5, ECF No. 45.
[5] Employees of the Sheriff's Office are ranked from lowest to highest as follows:  correctional officer, deputy, sergeant, lieutenant, captain, major, commander, chief deputy, and sheriff.

offenders, training, and the budget; (3) operations, which
included patrol, special operations, courts, and investigations;
and (4) professional standards, which was eventually separated
out from administration and included internal affairs. Darr
also replaced Johnson's command staff. Griffin retired, McCrea
was terminated, Ezell was transferred to Recorder's Court, and
Culpepper was transferred to the jail without any specific
duties assigned to him.[6] Darr formed a new command staff by
promoting John Fitzpatrick from lieutenant to chief deputy,
Randy Robertson from lieutenant to major, Mike Massey from
captain to major, and Dane Collins from lieutenant to jail
commander.

In addition to the complete overhaul of the command staff,
Darr made other employment changes based on his belief that
significant operational changes were necessary. He specifically
wanted to improve communications among Sheriff's Office
employees and establish a renewed focus on the Office's core
mission—the jail. *Id.* As part of this reorganization, Darr
promoted Larry Tippins, Gifford Anthony, Michael Farley, Brad
Hicks, and Steven Sikes from sergeant to lieutenant; promoted
Rusty Blair, Thomas Reavis, and Charles Pickett to sergeant;

---

[6] Culpepper also thought he was being retaliated against, and he
immediately complained to the new chief deputy about the reassignment.
Later that year, he was transferred to operations and was eventually
placed in charge of the office of professional standards. He is
currently a member of Darr's command staff.

transferred Sgt. Ron Trotter from an administrative position at the jail to a squad position at the jail; transferred Lt. Tompkins, Lt. Pamela Brown, and Sgt. Thomas Mitchell to the jail; transferred Sgt. Grace Boone Black from the jail to administration; and hired Tabitha Massey as an "administrative coordinator." Defs.' Mot. for Summ. J. Attach. 3, Darr Aff. ¶ 8, ECF No. 32-3; Darr Dep. 171:17-178:17; Darr Dep. Ex. 35, Proposed Reorganization Spreadsheet, ECF No. 53-2 at 20.

Although Ezell and Tompkins lost no pay or benefits as a result of Darr's reorganization, they both considered their transfers to be demotions. They also maintain that Darr demoted them in retaliation for their political support of Johnson.

A.    Ezell's Employment and Transfer

Ezell was hired as a correctional officer in 1983 and was promoted to deputy sheriff in 1985, sergeant in 1987, lieutenant in 1992, and captain in 1993. She was the only female captain at that time. She was the first woman to be promoted to major and became the jail warden in 2000. Ezell became commander in 2008 and began earning 5% more than majors in the same pay grade. As jail commander, Ezell was third in command on Johnson's command staff and supervised approximately 250 people. Ezell Decl. ¶ 10. Ezell considered running the jail one of the most important jobs in the Sheriff's Office. Ezell Dep. 43:24-44:1, ECF No. 39.

1. *Replacement of Ezell as Jail Commander and Transfer to Recorder's Court*

Upon taking office, Darr replaced Ezell with Collins as jail commander.  Collins has worked for the Sheriff's Office since 1993, has a master's degree, and had worked with Darr as a lieutenant squad commander at the jail.  Darr explained that he decided to replace Ezell as jail commander because during the time he worked as a sergeant at the jail, he witnessed several issues that needed improvement for which Ezell was ultimately responsible.  Those issues included a lack of effective communication among the staff and a lack of progress in addressing problems at the jail covered by a consent order with the Department of Justice.  Darr Aff. ¶ 4.  Darr believed that Collins was better-suited to effectuate the changes at the jail because of Collins's demonstrated organization, communication, and supervisory skills, which Darr had personally observed when he and Collins worked together at the jail.  *Id.* ¶ 5.

Upon deciding that Ezell would no longer be jail commander, Darr transferred her to Recorder's Court to handle the duties of the clerk for the Recorder's Court judge.  That position was previously held by a sergeant.  In her new position, Ezell primarily performed clerical duties related to the Recorder's Court docket, although she also had approximately twelve employees under her supervision.  Recorder's Court has

jurisdiction over traffic citations, city ordinance violations, and preliminary detention/bond hearings in certain criminal cases.  The Recorder's Court judge sets bail, issues warrants, and collects fines/bonds.

Notwithstanding the importance of Recorder's Court and even though she experienced no change in pay or benefits, Ezell considered her transfer and the accompanying change of duties to be a demotion.  She points to the following evidence to show that others in the Sheriff's Office also considered it a demotion.  A Personnel Action Form identifies the transfer as a change from jail commander to department major.  Ezell's new ID card identifies her as a major.  Chief Deputy Patrick, who is the highest ranking person in the Office just below the Sheriff, once referred to her as "Major" Ezell at a meeting.  She is also now considered a "major" and not a "commander" by other employees in the Office who have referred to her as Major or Ms. Ezell.  Shortly after her transfer, Ezell reported directly to the chief deputy, but she was excluded from command staff meetings with the exception of one meeting that specifically related to the budget for Recorder's Court.  Ezell also complains that her communications radio was taken from her at Darr's request.  She believed she needed the radio for her own safety but acknowledges that she has not shared this concern with anyone but Culpepper.  Ezell Dep. 46:21-51:1.

The Sheriff relinquished control of Recorder's Court Clerk to the City Manager in 2010, which had the effect of moving Ezell from a law enforcement employee to a general government employee supervised by the Deputy City Manager. After she came under the supervision of the City Manager's Office, Ezell was prevented from wearing her uniform, and she no longer has any law enforcement responsibilities. As a result of the transfer, she feels that she has suffered humiliation and loss of prestige and respect. *Id.* at 140:23-141:10; Ezell Decl. ¶ 15.

### 2. Denial of Comp Time

Ezell also claims that she is not allowed to earn and use comp time even though Darr has permitted male employees, including Chief Deputy Fitzpatrick, Major Robertson, and Major Culpepper, to accrue and use comp time. Darr Dep. 226:17-227:17. Defendants respond that Ezell has been an "exempt" employee under the Fair Labor Standards Act since being promoted to lieutenant in 1992, and therefore she is not entitled to comp time. Defendants dispute that Darr intentionally allowed other exempt employees to accrue comp time, but they do acknowledge that some employees may have done so erroneously. Ezell points to Defendants' records that show these male deputies' comp time totals rising and falling since Darr became Sheriff, suggesting that some exempt male employees were in fact continuing to accrue comp time. Ezell Decl. Ex. 1, Time and Pay Records, ECF

No. 50-1.  Ezell filed a Charge of Discrimination with the Equal
Employment Opportunity Commission ("EEOC") on September 28, 2010
charging that she experienced gender discrimination between
January 1, 2010, and May 1, 2010.

B.   Tompkins's Employment and Transfer

Tompkins has worked for the Sheriff's Office since 1984.
She started as a clerk in Recorder's Court and became a
correctional officer at the jail in 1993.  She was promoted in
1994 to deputy sheriff in the Patrol Division, where she
eventually rose to the rank of patrol sergeant in 2000.
Tompkins became the front desk sergeant a year or two later and
was reassigned to Recorder's Court at the end of 2003.  In 2007,
she was promoted to lieutenant of internal and legal standards.
In that position, she reported to the Sheriff or Chief Deputy.
She was responsible for community relations, and she shared
responsibility with Captain Larry Tew for all internal affairs
investigations, review of use of force reports, assisting with
litigation matters, responding to Georgia Open Records Act
requests, sitting on boards, state certification for policy and
practices, accreditation, budgeting, and the Guardian
newsletter.

Tompkins's position was eliminated by Darr as part of his
reorganization, and she was transferred to a lieutenant squad
commander position at the jail.  Tompkins considers this

transfer to be a demotion and contends that her old position was
not eliminated for legitimate reasons but was eliminated to
remove her from the duties and responsibilities she previously
had as a lieutenant in administration.   Darr claims he was
unaware of Tompkins's role in budgeting, internal affairs, or
citizen complaints before deciding to eliminate her position.
Darr Dep. 143:14-146:10, 157:15-24, 158:17-22; Tompkins Dep.
75:25-76:15, ECF No. 38.   Under Darr's reorganization plan,
internal affairs was part of the operations division.   Budgeting
was handled by Lieutenant Anthony, and litigation and open
records matters were handled by Captain Tew.   Tompkins Dep.
138:11-23.   Darr thought citizen complaints would "eventually
get turned over to whoever was over operations."   Darr Dep.
27:10-20.   No one took over the agency certification or
newsletter duties performed by Tompkins because Darr decided to
discontinue those activities.   Tompkins's responsibilities
regarding internal affairs and use of force reports were
eventually assigned to Major Culpepper.   Culpepper Dep. 67:22-
68:12, 73:21-74:7, ECF No. 36; Tompkins Decl. ¶ 15.

As lieutenant squad commander at the jail, Tompkins has
retained significant responsibilities; they are just different
than her previous duties.   She is now responsible for overseeing
a squad of approximately thirty-six officers and four sergeants,
and her duties include maintaining security at the jail and

dealing with other disciplinary, court, and employee issues. She works twelve-hour rotating shifts including nights, weekends, and holidays. Tompkins has kept her take-home vehicle privileges and has suffered no loss of pay, health insurance, or retirement benefits. It is undisputed that Darr considers Tompkins's position to be "very, very important." Darr Dep. 158:23-159:6. In fact, Tompkins replaced Fitzpatrick, who was Darr's lieutenant squad commander at the jail before Darr promoted him to chief deputy.

Nevertheless, Tompkins views the transfer as a demotion. She testified that some Sheriff's Office employees regard being transferred to the jail as discipline or punishment. Tompkins Dep. 79:11-21; Fitzpatrick Dep. 80:8-20, ECF No. 37; Ezell Dep. 116:13-117:7; Wynn Dep. 172:12-24, ECF No. 40; Culpepper Dep. 42:9-15; Brown Dep. 34:19-23, 79:15-16, 80:20-81:8, ECF No. 42; Tompkins Decl. ¶ 12. Tompkins notes that as part of Darr's reorganization, the following male lieutenants avoided being transferred to the jail: Mike Dailey, David Mack, Ricky Hinton, and Randy Robertson, who was promoted to major. Tompkins Decl. ¶ 13.

## II. Denial of Captain Promotion—Tompkins and Wynn

In April 2010, Captain Leroy Mills retired, creating a vacancy for the position of captain of administration at the jail. Both Tompkins and Wynn applied for the job. Two other

lieutenants with relatively long tenures in the Sheriff's Office, William Drury ("Drury") and Charles Shafer ("Shafer"), also applied. Fitzpatrick Dep. 34:9-35:6. Darr considered each candidate's relevant experience, years of service, and education. He ultimately selected Shafer based on his work history and experience with jail administration as a lieutenant under Captain Mills. Darr Dep. 215:16-21, 218:21-220:20; Fitzpatrick Dep. 34:23-35:3. Tompkins and Wynn claim they were clearly more qualified and that they were denied the promotion because of their gender.

The captain position included responsibility for overseeing the budget, grievances, personnel issues, communication with outside agencies, facilities maintenance, and inmate classification, processing, and transportation. Tompkins Dep. 124:1-12; Tompkins Decl. ¶ 21; Wynn Decl. ¶ 12, ECF No. 51. The qualifications of the four applicants are as follows.

Shafer started working for the Sheriff's Office in 1983 and was promoted to deputy sheriff and then sergeant in 1984. He was promoted to lieutenant in 1999. Shafer has spent virtually his entire career working at the jail, including more than ten years as a lieutenant handling facilities management at the jail under Captain Mills. Shafer is several units short of completing his associate's degree.

In addition to her work experience which has previously been described in this Order, Tompkins has a master's degree in public administration.  She has also attended Command College.

Wynn also has a master's degree and has been to Command College.  She was hired as a jailor in 1986 and was promoted to deputy sheriff in 1988.  Wynn resigned in 1990 but was rehired as a deputy in administration in 1994.  Wynn was promoted to sergeant in 1999 and was transferred to the jail.  For a short period of time, she worked in the front office performing administrative duties, but she primarily worked on the squad at the jail.  She was promoted to lieutenant squad commander in 2002.

Drury obtained a bachelor's degree in education in 1982 and was an educator until the Sheriff's Office hired him as a jailor in 1984.  Drury became a deputy sheriff in the uniform division that same year.  He was promoted to sergeant in 1993, obtained his master's degree in 1997, and remained in the uniform division until he was promoted to lieutenant in 2002 as a lieutenant squad commander at the jail.

The four candidates were interviewed one after the other in joint sessions by Darr, Chief Deputy Fitzpatrick, Commander Collins, and Majors Robertson and Massey.  Darr led the subsequent discussion to determine who was the best individual for the position, but he did not make his preference clear

15

during that discussion.  Fitzpatrick Dep. 37:4-7.  Fitzpatrick opined that a woman should be chosen, but he felt that all four candidates were qualified.

After Shafer was promoted to the position, Collins transferred Wynn to work under Shafer where she performed some of the administrative responsibilities formerly handled by Captain Mills.  Those responsibilities included overseeing the jail administrative office, the court detail and trip detail officers, and the employees handling accounts, classification, and timekeeping.  According to Wynn, Mills told her that Shafer "was not qualified" to perform these tasks.  Wynn Decl. ¶ 16. Wynn also stated that Shafer's previous experience, which consisted primarily of reviewing work crew orders, comprises only 2-5% of the administrative captain duties.  *Id.* ¶ 17. Collins explained that he transferred Wynn to work under Shafer in jail administration because he thought Wynn would prefer to work on a Monday-Friday schedule rather than in her position as lieutenant squad commander, involving twelve-hour shifts, rotating days and nights every ten weeks.  Collins Aff. ¶ 9, ECF No. 32-5.

Tompkins and Wynn filed Charges of Discrimination alleging gender discrimination with the EEOC on September 28, 2010.

III. **Employment Policies and Final Decisionmaking**

The Sheriff has the final word on all employment decisions in the Sheriff's Office except for terminations, demotions, suspensions of more than one day, and fines. All Sheriff's Office employees have been placed under Columbus's merit system, so an aggrieved employee may appeal terminations, demotions, suspensions, and fines to Columbus's Personnel Review Board, which can reverse these employment decisions.

Columbus has personnel policies prohibiting harassment, discrimination, and retaliation on the basis of race, gender, and any other legally protected category; these policies apply to employees of the Sheriff's Office. Barron Aff. ¶¶ 2-3, ECF No. 32-4; Barron Dep. 70:13-20, 76:20-25, ECF No. 35; Ezell Dep. 34:2-11; Tompkins Dep. 65:12-66:15; Wynn Dep. 83:14-84:4. Columbus's Fair Treatment Policy provides a formal method for employees to "appeal personnel actions relating to demotion, suspension, fines, dismissal, alleged discrimination, or unfair treatment." Tompkins Dep. Ex. 7, Affirmative Action – Fair Treatment Policy, ECF No. 54-1 at 15. Employees can appeal any unfair treatment by filing a Fair Treatment Report for independent review by the Human Resources Director for Columbus. The Human Resources Director, however, does not have the authority to compel an elected official, such as the Sheriff, to correct employee grievances that do not rise to the level of

termination, demotion, suspension, or fines, and there is no appeal to the Personnel Review Board for these less serious employee grievances. Barron Dep. 78:1-80:3. Instead, the Human Resources Director is left with the tepid tool of mediation on behalf of the employee to persuade the elected official to change the decision, with the assistance of the City Attorney if necessary.

It is clear that for claims of termination, demotion, suspension, and fines, the Sheriff is not the final decisionmaker for Columbus—the Personnel Review Board is. But for all other employment actions, the Sheriff acts as the final decisionmaker for Columbus.[7]

DISCUSSION

In an effort to minimize duplication, the remainder of this Order is organized as follows. Section I addresses Plaintiffs' First Amendment claims. Section II addresses Plaintiffs' gender discrimination claims and is subdivided as follows. Subsection II.A disposes of some of Plaintiffs' Title VII gender discrimination claims because of Plaintiffs' failure to exhaust administrative remedies. Subsection II.B discusses whether gender was a motivating factor as to the employment decisions complained of by Plaintiffs. Subsection II.C.1 addresses Darr's

---

[7] Columbus does not argue that the Sheriff does not act on behalf of Columbus when he makes employment decisions. Columbus simply maintains that the Sheriff is not the *final* decisionmaker because his employees are under the Columbus Merit System.

18

qualified immunity defense as to Plaintiffs' Fourteenth Amendment § 1983 claims.  Finally, Subsection II.C.2 discusses Columbus's liability under § 1983 for Plaintiffs' Fourteenth Amendment gender discrimination claims.

## I.    First Amendment § 1983 Claims

Ezell and Tompkins assert § 1983 claims against Columbus and Darr for violations of the First Amendment.  Specifically, they contend that Darr transferred them in retaliation for exercising their First Amendment rights to support Johnson in the 2008 election.

The Court first addresses whether political loyalty is an appropriate requirement for the effective performance of a Muscogee County deputy sheriff.  If it is, the adverse employment actions complained of by Ezell and Tompkins do not violate the First Amendment.  *See Branti v. Finkel*, 445 U.S. 507, 517-18 (1980) (noting that political affiliation "may be an acceptable requirement for some types of government employment").  The Eleventh Circuit has held that, under Alabama and Florida law, such loyalty is an appropriate requirement for deputy sheriffs.  In *Terry v. Cook*, the Eleventh Circuit held that "loyalty to the individual sheriff and the goals and policies he seeks to implement through his office is an appropriate requirement for the effective performance of a deputy sheriff."  866 F.2d 373, 377 (11th Cir. 1989).  In

finding that the Alabama sheriff did not violate the First Amendment when he refused to reappoint those deputy sheriffs who did not support his election, the court explained that the relationship between a sheriff and his deputies required "closeness and cooperation" justifying the need for a sheriff's "absolute authority" to hire and fire based on who did not support him. *Id.* The court further noted that a deputy sheriff functions as the sheriff's general agent and that a sheriff can be held liable for the actions of his deputy sheriffs. In *Cutcliffe v. Cochran*, the Eleventh Circuit found *Terry* controlling and affirmed summary judgment in favor of a Florida sheriff who terminated deputies who had supported his opponent in the election. 117 F.3d 1353, 1357-58 (11th Cir. 1997). And in *Silva v. Bieluch*, the Eleventh Circuit held that because *Terry* established that "personal loyalty to the sheriff is an appropriate requirement for the effective performance of a deputy sheriff," a Florida sheriff may promote and demote in addition to hire and fire based on loyalty. 351 F.3d 1045, 1047 (11th Cir. 2003). The Eleventh Circuit has not determined whether Georgia Sheriffs are likewise entitled to this absolute loyalty that shields them from these types of First Amendment claims, but the Court finds the rationale and holdings of these cases binding here.

Plaintiffs argue that political loyalty cannot be an appropriate requirement for the Sheriff of Muscogee County, Georgia because all employees of the Sheriff's Office have been placed within the protection of the Columbus merit system. It appears well settled under Georgia law that employees of a Sheriff who are under a merit system plan are entitled to all rights provided for under that plan. *See, e.g.*, *Wayne Cnty. v. Herrin*, 210 Ga. App. 747, 753, 437 S.E.2d 793, 799 (1993); *see also Hill v. Watkins*, 280 Ga. 278, 278-79, 627 S.E.2d 3, 4 (2006). Therefore, if the merit system permits employees to appeal employment decisions to a personnel review board, the Sheriff is bound by that process. This does not mean, however, that a merit system plan creates new First Amendment rights that do not exist without the plan. It also does not eliminate the nature of a deputy sheriff position and the unique relationship between deputies and the sheriff which may make political loyalty a necessary consideration for certain employment decisions. And it certainly does not mean that a sheriff who considers such circumstances has violated a deputy's First Amendment rights. It simply means that the deputy sheriff must be afforded the rights provided under the merit system consistent with due process considerations.

Plaintiffs argue that by placing Sheriff's Office employees under the Columbus merit system, Columbus and the Sheriff have

determined that political loyalty is not an appropriate requirement for any employee's effective job performance. Plaintiffs point to the following language from the Columbus Ordinance: "this government shall be an equal employment opportunity employer, and . . . applicants and employees shall not be discriminated against because of race, color, creed, sex, *political affiliations*, age, physical disability, national origin, or any other non[-]merit factor." Columbus, Ga., Code of Ordinances § 16B-1-2(b). The Court finds Plaintiffs' interpretation of this ordinance to be overbroad. The clear purpose of this ordinance is to express Columbus's confirmation that it is an equal employment opportunity employer and that it intends to comply with anti-discrimination laws. Even if the ordinance somehow established a "right" to be free from "non-merit" based employment decisions, that right must be vindicated through the merit system process not via the First Amendment. The Columbus City Council certainly cannot amend the United States Constitution notwithstanding counsel's creative argument that they have done so.

The Court rejects Plaintiff's contention that the Sheriff has expanded First Amendment protections to his deputies beyond those available under well-established law. The ordinance certainly does not state or imply that the Sheriff has determined that political loyalty is not a necessary requirement

for any position in his office.  To determine whether the position of deputy sheriff is a position for which the Sheriff may insist upon political loyalty without violating the First Amendment, the Court must examine the duties of the office of deputy sheriff and determine whether they are the same duties to be performed by the Sheriff.  *Underwood v. Harkins,* 698 F.3d 1335, 1344 (11th Cir. 2012) (expressly adopting this "categorical" approach).  There is no genuine dispute that Georgia sheriffs and their deputies share the same type of close relationship shared by Alabama sheriffs and their deputies as described in *Terry.  See* O.C.G.A. § 15-16-10 (setting forth a sheriff's duties); *Veit v. State*, 182 Ga. App. 753, 756, 357 S.E.2d 113, 115 (1987) ("A deputy sheriff is an agent of the sheriff and in effecting the proper discharge of his duties is empowered with the same duties and powers.").  For the same reasons that political loyalty is a legitimate requirement for the effective performance of an Alabama deputy's job, the Court finds it is a legitimate requirement for Muscogee County, Georgia deputy sheriffs insofar as the First Amendment is concerned.  Consequently, under *Terry,* Darr did not violate Plaintiffs' First Amendment rights when he transferred them.[8]

---

[8] Even if the Court applied the "actual job duties test" advocated by the dissent in *Underwood*, 698 F.3d at 1346 (Martin, J. dissenting), the Court would find as a matter of law that the actual job duties performed by Plaintiffs were such that political loyalty is an appropriate requirement for the effective performance of their

The Court makes no determination today as to whether a decision by Darr to terminate or demote a deputy sheriff because of a lack of political loyalty could be reviewed by the Personnel Review Board under the merit system.  The Court simply holds that the *First Amendment* does not tie the hands of the Sheriff.  Moreover, Columbus's expression of a general policy that it is an equal opportunity employer does not convert a constitutional employment action into an unconstitutional one. *See Silva*, 351 F.3d at 1047-48 (addressing the effect of a Florida county merit system on the plaintiffs' procedural due process claims but still applying *Terry* and *Cutcliffe* to the plaintiffs' political patronage claims).  While the Sheriff may be constrained by the terms of the merit system and due process considerations, he is not constrained by the First Amendment for employment decisions based on a deputy's lack of loyalty.

Under *Terry,* Darr did not violate Ezell's and Tompkins's First Amendment rights.  The fact that Ezell and Tompkins have certain rights under the Columbus merit system does not change

---

positions.  Darr ran against the incumbent sheriff to change the direction of the office.  Ezell was a member of the incumbent's command staff, his number three person.  A new sheriff certainly should be able to expect to fill that position with a person he can trust unconditionally.  Tompkins, while not a member of the command staff, was also directly involved in the administration and direction of the Sheriff's Office.  Darr should be able to have a person handling those duties who he can trust to implement his vision for the Sheriff's Office.  Darr was elected by the citizens to establish the direction of the Sheriff's Office and manage it.  Our First Amendment jurisprudence clearly holds that he should be able to surround himself with deputies at the top of his organization who share his vision.

this conclusion.   For these reasons, Defendants are entitled to summary judgment on Plaintiffs' First Amendment claims.

## II.   Gender Discrimination Claims

Although a sheriff's employment decisions may be motivated by political loyalty without running afoul of the First Amendment, they may not generally be motivated by gender without violating Title VII and the Equal Protection clause of the Fourteenth Amendment.   In support of their Title VII claims and their Fourteenth Amendment gender discrimination claims brought pursuant to § 1983, Plaintiffs maintain that gender was a motivating factor in Darr's decisions to: (1) transfer Ezell from jail commander to clerk in Recorder's Court; (2) transfer Tompkins from lieutenant of internal and legal standards in administration to lieutenant squad commander at the jail; (3) deny the promotion of Tompkins to captain; (4) deny the promotion of Wynn to captain; and (5) prohibit Ezell from earning and using comp time.[9]   Defendants respond that (1) Ezell and Tompkins failed to exhaust their administrative remedies under Title VII for their transfer claims; (2) gender was not a motivating factor in any of these decisions, and even if it was,

---

[9] In response to Defendants' Motion for Summary Judgment and Statement of Material Facts, Plaintiffs failed to present any arguments as to any separate claim based on (1) Wynn's transfer to an administrative position at the jail in 2010, (2) Tompkins's supervisor's instruction that she not to go to Recorder's Court except on official business, and (3) the transfer of Recorder's Court to the City Manager's Office. As such, these claims are deemed abandoned.   *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc).

Darr would have made the same decision for non-discriminatory reasons; (3) the transfers of Ezell and Tompkins were not adverse employment actions and thus not actionable under Title VII or § 1983; (4) Darr is entitled to qualified immunity as to Plaintiffs' claims against him in his individual capacity; and (5) Columbus is not liable under § 1983 because Darr was not the final decisionmaker for the employment decisions upon which Plaintiffs' claims against Columbus are based.   The Court addresses each of these issues in turn.

A.   Failure to Exhaust Administrative Remedies under Title VII

Defendants argue that Ezell's and Tompkins's transfer/demotion claims are not actionable under Title VII because they occurred more than 180 days prior to Ezell's and Tompkins's September 2010 Charges of Discrimination.   Title VII requires plaintiffs to file charges of discrimination with the EEOC within 180 days after the allegedly discriminatory act(s) occurred.   42 U.S.C. § 2000e-5(e)(1).   Because Ezell and Tompkins concede that they failed to exhaust their administrative remedies with regard to their January 2009 transfers, Pls.' Resp. in Opp'n to Defs.' Mot. for Summ. J. 12 n.13, ECF No. 46, Defendants are entitled to summary judgment as

to these Title VII claims.[10]  This ruling does not affect Ezell's and Tompkins's Fourteenth Amendment § 1983 claims arising from these transfers.

> B.  Gender as a Motivating Factor, Adverse Employment Actions, and the "Same Decision Defense"

To prevail on their remaining Title VII gender discrimination claims against Columbus and § 1983 gender discrimination claims against Darr and Columbus, Plaintiffs must first prove that gender was a motivating factor in Darr's employment decisions and that those decisions resulted in an adverse employment action.  Plaintiffs rely on circumstantial evidence to prove that gender was a motivating factor in Darr's decisions, so the Court will use the familiar framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981), which applies in both Title VII and § 1983 gender discrimination cases.  *Underwood v. Perry Cnty. Comm'n*, 431 F.3d 788, 793-94 (11th Cir. 2005) (per curiam).  Under this framework, the Court must first determine whether the plaintiff has made out a *prima facie* case.  To make out a *prima facie* case, the plaintiff must show, among other things, that she

---

[10]  In their reply brief, Defendants asserted that Ezell failed to exhaust her administrative remedies regarding her comp time claim because her Charge of Discrimination did not complain of any issues with her comp time.  Because this argument relies on an analysis of the Charge itself, a document which the parties did not point to and which does not appear to be in the present record, the Court declines to address the argument at this stage of the proceedings.

suffered an adverse employment action. *Id.* at 794. If a *prima
facie* case exists, the burden shifts to the defendant to
articulate a non-discriminatory reason for taking the complained
of employment action. *Id.* If the defendant meets this burden,
the burden shifts to the plaintiff to create a genuine factual
dispute as to whether defendant's reasons are a pretext for
discrimination. *Id.*

Even if gender were a motivating factor, Defendants can
escape all liability for the § 1983 claims and liability for
damages on the Title VII claims if they can establish that Darr
would have made the same decisions for non-discriminatory
reasons. *See* 42 U.S.C. § 2000e-5(g)(2)(B) (providing that if a
Title VII defendant can demonstrate that he "would have taken
the same action in absence of the impermissible motivating
factor, the court . . . shall not award damages or issue"
certain equitable relief); *Mt. Healthy City Sch. Dist. Bd. of
Educ. v. Doyle*, 429 U.S. 274, 287 (1977) (placing the burden on
the defendant to show by a preponderance of the evidence that it
would have reached the same decision despite the
unconstitutional motivating factor); *Foy v. Holston*, 94 F.3d
1528, 1534 (11th Cir. 1996) (noting that *Mt. Healthy* establishes
that a decision motivated by discriminatory reasons is not
unlawful for § 1983 purposes if the official can show that he

would have made the same decision even if he lacked discriminatory intent).

### 1. Failure to Promote Tompkins or Wynn to Captain

Both Tompkins and Wynn claim that they were denied a promotion to captain because of their gender. To establish a *prima facie* failure to promote claim, a plaintiff must show "(1) she belonged to a protected class, (2) she was qualified for and applied for the position, (3) despite [her] qualifications, she was rejected, and (4) the position was filled with an individual outside the protected class."[11] *Springer v. Convergys Customer Mgmt. Grp., Inc.*, 509 F.3d 1344, 1347 n.2 (11th Cir. 2007) (per curiam). There is no dispute that Tompkins and Wynn belong to a protected group, that they applied for and were qualified for the promotion, that neither received the promotion, and that Shafer, a male, was promoted to the captain position. Thus, the burden shifts to Defendants to articulate a legitimate nondiscriminatory reason for promoting Shafer instead of Tompkins or Wynn.

Darr states that his decision to promote Shafer instead of Tompkins or Wynn was based on the fact that Shafer was the only

---

[11] Some Eleventh Circuit cases have articulated the fourth prong differently as "(4) that other equally or less-qualified employees outside her class were promoted." *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1174 (11th Cir. 2010). In *Walker v. Mortham*, the Eleventh Circuit addressed the issue and specifically held that a plaintiff need not prove relative qualifications at the *prima facie* stage. 158 F.3d 1177, 1193 (11th Cir. 1998). Therefore, the Court will address that evidence during subsequent stages of its analysis.

candidate who had experience in jail administration—facilities maintenance in particular—and that he was the only candidate who had been working in that area for years under the captain he was seeking to replace. Given these legitimate non-discriminatory reasons for Darr's promotion of Shafer, Plaintiffs must point to sufficient evidence creating a factual dispute as to whether these proffered reasons were pretext for discrimination in order to avoid summary judgment. A plaintiff may demonstrate pretext through "such weaknesses, implausibilities, inconsistencies or contradictions in [the defendant's] proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Id.* at 1348. A plaintiff cannot prove pretext simply "by showing that [s]he was better qualified than the [person] who received the position [s]he coveted." *Id.* at 1349 (second alteration in original) (internal quotation marks omitted). Rather, a plaintiff must show that the disparities between their "qualifications were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." *Id.* (internal quotation marks omitted). A plaintiff can also prove pretext by other circumstantial evidence that the decision was in fact motivated by gender discrimination. A plaintiff will always survive summary judgment if she presents circumstantial evidence that would

allow a jury to infer a defendant acted with discriminatory intent. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). If the record, viewed in the light most favorable to the plaintiff, "presents a convincing mosaic of circumstantial evidence" that raises a reasonable inference that the employer discriminated against the plaintiff, summary judgment is not appropriate. *Id.* (internal quotation marks omitted).

Here, Plaintiffs point to sufficient evidence to raise factual disputes as to whether Defendants' reasons were pretext for intentional discrimination.[12] The record shows that Darr considered tenure, education, and relevant experience in his promotion decision. While it is undisputed that Shafer started working at the Sheriff's Office a year before Tompkins and that he has the most experience as a deputy and lieutenant in jail administration, Tompkins and Wynn have each worked for the Sheriff's Office more than twenty years in various capacities and also have experience relevant to the position. Tompkins has administrative experience with budgeting and working with outside agencies, and Wynn temporarily had administrative duties

---

[12] Plaintiffs also point to testimony that Chief Deputy Fitzpatrick recommended to Darr that "a female needed to be promoted" to the captain position as evidence. Fitzpatrick Dep. 33:22-34:5. The comment makes no reference to the qualifications of Tompkins, Wynn, or Shafer. Declining to follow a recommendation that is based on gender rather than actual qualifications cannot constitute evidence of gender discrimination.

at the jail.   Also, Tompkins and Wynn have considerably more education than Shafer.[13]

Furthermore, the evidence shows that after Shafer received the promotion, Wynn was assigned to handle some of the administrative responsibilities that Shafer was not qualified to handle.   This evidence raises weaknesses and inconsistencies in Darr's stated reason for choosing Shafer—that he was better qualified—and would permit a reasonable jury to conclude that Darr's proffered reason for his decision is pretext for discrimination.   The Court therefore finds that a jury question exists as to whether gender was a motivating factor in Darr's denial of the promotion to Tompkins and Wynn.   The Court likewise finds that disputed factual issues exist regarding Defendants' same decision defense.   Given these findings and the undisputed fact that a denial of a promotion is clearly an adverse employment action, Columbus is not entitled to summary judgment on Tompkins's and Wynn's Title VII failure to promote claims.   Whether Columbus is entitled to summary judgment on Tompkins's and Wynn's failure to promote claims under § 1983 depends on whether Darr was a final decisionmaker for Columbus for this employment action, which the Court discusses in Section II.C.2, *infra*, of this Order.   Whether Darr is entitled to

---

[13] Defendants dispute the importance of master's degrees by pointing out that even Johnson promoted Larry Mitchell to captain although he did not have a master's degree at a time Tompkins and Wynn did.

qualified immunity on these claims is discussed in Section
II.C.1, *infra,* of this Order.

### 2. Refusal to Allow Ezell to Earn or Use Comp Time

Ezell claims that Darr did not allow her to earn or use
comp time because of her gender.  To establish a *prima facie*
case of disparate treatment gender discrimination, a plaintiff
must show that she was (1) a member of a protected class; (2)
qualified for her current position; (3) subjected to an adverse
employment action; and (4) treated less favorably than a
similarly-situated employee outside her protected group.  *E.g.,*
*Gresham v. City of Florence, Ala.*, 319 F. App'x 857, 864 (11th
Cir. 2009) (per curiam).  Defendants do not dispute that Ezell
is a member of a protected class or is qualified for her
position, but they do contend that Ezell cannot show she
suffered an adverse employment action or that the male employees
with whom she compares herself were similarly situated.
Defendants' first argument relies solely on Ezell's testimony
that she did not remember exactly what she was asking when she
was told she did not have the comp time hours she thought she
had.  Ezell Dep. 147:13-148:1.  Defendants contend this
testimony establishes as a matter of law that Ezell only
suffered speculative, intangible harm.  *See Davis v. Town of*
*Lake Park, Fl.,* 245 F.3d 1232, 1240 (11th Cir. 2001) ("[T]he
asserted impact cannot be speculative and must at least have a

tangible adverse effect on . . . employment."). Plaintiffs pointed to evidence in the record that Darr actually denied Ezell the use and accrual of comp time—her declaration swearing so. Ezell Decl. ¶ 11. Because the denial of comp time impacts her employment benefits "in a real demonstrable way," *Davis*, 245 F.3d at 1240, the Court is not convinced by Defendants' argument. Second, Defendants argue that Ezell has been exempt from accruing comp time for the last twenty years and that because her male comparators only used comp time accrued before they became exempt, they are not similarly situated. To contradict Defendants' contention, Ezell points to business records showing these male employees' comp time totals falling *and rising* in 2009, suggesting that they were earning comp time and using it after they allegedly became exempt. A jury could reasonably infer from this evidence that the male comparators were permitted to earn and accrue comp time notwithstanding their exempt status. Ezell has made out a *prima facie* case.

As explained, Defendants' explanation that Ezell was denied comp time because she is "exempt" is weakened by evidence suggesting that other high-ranking male employees were permitted to use and add to their comp time since becoming exempt. Ezell has pointed to sufficient evidence to create a disputed issue of material fact as to whether Defendants' reason for denying her comp time is a pretext for gender discrimination. Columbus is

not entitled to summary judgment on this Title VII claim. As with the denial of promotion claims, the issue of whether Darr can be individually liable for this claim depends on whether he is entitled to qualified immunity, and the issue of whether Columbus can be found liable under § 1983 depends on whether Darr was a final decisionmaker for Columbus on this claim. These issues are discussed in Sections II.C.1 and II.C.2, *infra.*

### 3. Transfers of Ezell and Tompkins

Although Ezell and Tompkins cannot pursue their transfer/demotion claims pursuant to Title VII because they failed to exhaust their Title VII administrative remedies, they can pursue the claims as a violation of their Fourteenth Amendment rights pursuant to § 1983. To establish a *prima facie* case of a discriminatory transfer, a plaintiff must show she was (1) a member of a protected class; (2) qualified for her current position; (3) subjected to a transfer constituting an adverse employment action; and (4) replaced by someone outside her protected class. *Hinson v. Clinch Cnty., Ga. Bd. of Educ.*, 231 F.3d 821, 828 (11th Cir. 2000). Defendants maintain that neither Ezell nor Tompkins can make out a *prima facie* case because their transfers were not adverse employment actions. An "adverse employment action" requires "a *serious and material* change in the terms, conditions, or privileges of employment." *Webb-Edwards v. Orange Cnty. Sheriff's Office*, 525 F.3d 1013,

1031 (11th Cir. 2008) (internal quotation marks omitted).  The relevant inquiry is whether the employment action is "materially adverse as viewed by a reasonable person in the circumstances," regardless of the "employee's subjective view of the significant adversity."  *Id.* (internal quotation marks omitted).  A transfer can be adverse if it involves a serious and material "reduction in pay, prestige, or responsibility."  *Hinson*, 231 F.3d at 829. Defendants also maintain that even if the transfers are determined to be adverse employment actions, they are not actionable because they were made for legitimate non-discriminatory reasons, and no evidence exists that Darr's legitimate stated reasons were pretextual.

### i.  Ezell's Transfer

Ezell asserts that she suffered an adverse employment action because her transfer was a demotion and involved a serious reduction in prestige and responsibility.  Ezell was transferred from jail commander to clerk of Recorder's Court. It is undisputed that Ezell received the same pay and employment benefits after her transfer.  Ezell contends, however, that Defendants nevertheless reduced her rank, or at a minimum, treated her as if she had a lower rank.  Defendants deny that Ezell's rank was ever reduced.  Ezell, however, has presented evidence to raise a factual dispute as to this issue.  After her transfer, Ezell's rank was listed on her official ID card and

36

personnel form as Major instead of Commander.  Other employees,
including Chief Deputy Fitzpatrick, have called her Major Ezell.
Defendants respond that the personnel form does not reflect a
change in rank because "they are pretty much identical positions
as far as the payroll system's concerned."  Barron Dep. 128:5-18
(explaining further that "that other position was associated
with the job title major in the computer system because somebody
put it that way and not necessarily was a change of rank at
all").  Defendants also explain that her rank was erroneously
listed as Major on her ID and that they mistakenly thought the
error had been corrected.  Fitzpatrick Dep. 67:8-16.  Ezell
disputes this explanation with testimony that the individual who
prepared the ID card "was instructed to do it that way."  Ezell
Dep. 95:18-96:7.  The present record thus demonstrates that a
genuine factual dispute exists as to whether Defendants lowered
Ezell's rank, albeit without any loss in pay.

     Ezell also pointed to evidence that her transfer resulted
in a significant reduction in prestige and responsibility.
Ezell went from supervising approximately 250 people to
supervising twelve people.  Her new position was formerly
performed by a sergeant four ranks lower than her rank of
commander.  She was no longer invited to the sheriff's command
staff meetings unless they specifically involved Recorder's
Court.  Her new duties also were not connected to duties

37

typically performed by a sworn law enforcement officer. Instead, Ezell functioned as the clerk for the Recorder's Court judge, keeping the records and calendar straight. Eventually, the position was placed under the City Manager's authority and taken outside of the Sheriff's chain of command, where she was instructed not to wear her uniform. A reasonable jury could conclude these changes were sufficiently significant that a reasonable person would view the transfer as materially adverse.

Defendants argue that even if the transfer was an adverse employment action, it was not motivated by Ezell's gender. Darr's stated reason for transferring Ezell was that it was done as part of his reorganization of the Sheriff's Office. Darr reorganized the Sheriff's Office because he was dissatisfied with the way it had been operating under Johnson and felt members of Johnson's command staff were unprofessional. Darr linked Ezell to these problems. While she was jail commander, Darr witnessed communication problems at the jail, and he was concerned with the jail's lack of progress regarding the federal consent decree while Ezell was jail commander. Darr Aff. ¶ 4. Darr wanted a change and wanted to put someone in the position of jail commander who would share his vision for the jail. *Id.* ¶ 5. The Court finds these reasons adequate to satisfy Defendants' burden of articulating non-discriminatory reasons for the transfer. Accordingly, the burden shifts back to Ezell

to demonstrate these reasons are pretext for discrimination rather than the true reasons for Ezell's transfer.

To establish pretext, Ezell's counsel points to the following: (1) Darr decided to transfer Ezell immediately upon taking office without attempting to resolve any claimed deficiencies in the way Ezell ran the jail; (2) she was replaced by a male formerly three ranks beneath her; (3) she was transferred to her new post which was most recently held by a male four ranks beneath her; and (4) although she was still the highest ranking female in the Sheriff's Office, she was no longer invited to attend the regular meetings of the command staff, to which only males were regularly invited.[14]

Ezell's counsel, however, selectively ignores the context in which the transfer decision was made when arguing her gender claim despite highlighting this context when advocating for her First Amendment claim.  While counsel may certainly maintain alternative claims, counsel cannot ignore evidence or lack of it.  Darr had defeated the incumbent sheriff.  He was clearly not satisfied with the previous administration's management of the office, and he planned to make changes.  To implement his changes, Darr changed the command staff.  While there is evidence that he did so because Ezell supported Johnson, there

---

[14] Plaintiffs also point to Darr's other promotion decisions as evidence of his general gender bias.

is no evidence that his transfer of her was motivated by gender. In fact, the thrust of Ezell's complaint is that Darr transferred her to retaliate against her because of her support of Johnson. The Court acknowledges that Ezell can assert a claim based upon more than one improper motive. But she has simply failed to present sufficient evidence that gender was one of them. Although Ezell may disagree with Darr's rationale, her circumstantial evidence does not sufficiently establish that Darr's stated reasons for his decision are so implausible that they are pretext for gender discrimination. *See, e.g.*, *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997) (noting plaintiff's confusion between "*disagreement* about the wisdom of an employer's reason and *disbelief* of the existence of that reason and its application in the circumstances" and finding that merely questioning the defendant's reason was insufficient "to permit a reasonable factfinder to disbelieve" the defendant's proffered explanation); *see also Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc) ("Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarrelling with the wisdom of that reason."). Accordingly, Defendants are entitled to summary judgment on Ezell's gender-based demotion/transfer claim.

### ii.   Tompkins's Transfer

Defendants contend that Tompkins cannot make out a *prima facie* case on her transfer claim primarily because the transfer does not constitute an adverse employment action.

It is undisputed that Tompkins was transferred from a lieutenant position overseeing internal and legal standards in administration to a lieutenant squad commander position at the jail. It is also undisputed that she received the same pay and employment benefits. Tompkins argues that her transfer was an adverse employment action because her responsibilities were significantly diminished. The present record does not support her claim. The record demonstrates that while her duties changed, her responsibilities were not significantly diminished to the point that a reasonable juror could conclude that she suffered a material loss in prestige and responsibility. In fact, the record reveals that she assumed more supervisory responsibilities as lieutenant squad commander at the jail. Her conclusory and vague allegation that transfers to the jail have generally been considered "punishment" is not enough to establish an adverse employment action. The Court finds that although Tompkins may have viewed her new assignment as less desirable than her previous one, there is insufficient evidence from which a reasonable jury could conclude that she suffered a serious reduction in pay, responsibilities, or prestige such

that her transfer would be considered materially adverse. In light of this finding, it is unnecessary to determine whether Darr was motivated by Tompkins's gender when he transferred her. Without an adverse employment action, Tompkins cannot recover regardless of Darr's motivation. Defendants' motion for summary judgment is granted as to Tompkins's gender-based transfer/demotion claim.

C. Fourteenth Amendment § 1983 Claims Against Darr and Columbus

As previously explained, the Court finds that jury questions exist as to whether gender was a motivating factor in the following adverse employment actions taken by Darr: (1) the denials of promotion to Tompkins and Wynn and (2) the denial of comp time to Ezell. But this is not enough to avoid summary judgment in favor of Darr and Columbus. For Darr to be liable in his individual capacity for Plaintiffs' Fourteenth Amendment § 1983 claims, Plaintiffs must overcome Darr's qualified immunity defense. And to establish their § 1983 claim against Columbus, Plaintiffs must establish that Darr was a final decisionmaker for Columbus regarding these employment decisions. The Court addresses these issues in turn.

1. Darr's Individual Liability and Qualified Immunity

Public officials acting within the scope of their discretionary authority are protected by qualified immunity as

42

long as their actions do not violate clearly established law. *Rehberg v. Paulk*, 611 F.3d 828, 838 (11th Cir. 2010), *aff'd*, 132 S. Ct. 1497 (2012). Once an individual defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to demonstrate (1) that the defendant's conduct violated a constitutional right and (2) that the right was clearly established at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). A right is clearly established if it is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). While the particular action in question need not have been previously held unlawful, the unlawfulness of the action must be apparent in light of pre-existing law. *Id.*

Here, it is undisputed that Darr was acting within his discretionary authority as sheriff when making employment decisions regarding employees of the Sheriff's Office. The Court has concluded that a reasonable jury could find that Darr intentionally discriminated against Plaintiffs based on their gender when he failed to promote Tompkins or Wynn and failed to allow Ezell to use or accrue comp time. The question is whether it was clearly established at the time he made these decisions that these actions violated Plaintiffs' Fourteenth Amendment rights.

Defendants do not dispute that the right to be free from gender discrimination in the workplace was clearly established at the time Darr took these employment actions. Rather, Defendants argue that Darr is entitled to qualified immunity because a reasonable sheriff would not have known from pre-existing case law that taking the specific employment actions in question was unlawful "in light of the specific context" of the facts he confronted. *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1283 (11th Cir. 2008) (internal quotation marks omitted). The Court finds it clear that if Darr denied Tompkins and Wynn the promotion because of their gender, a decision to be made ultimately by the jury, that he violated clearly established law. Furthermore, if the jury concludes that he denied Ezell comp time because of her gender, then he violated clearly established law.

Darr also argues that he is entitled to qualified immunity based on his contention that it is *undisputed* that (1) objectively valid reasons existed for his employment actions and (2) the employment actions were actually motivated, at least in part, by the objectively valid reasons. *See Rioux*, 520 F.3d at 1284-85 (extending qualified immunity to defendant because *undisputed* evidence showed that his decisions were motivated at least in part by lawful justifications); *Stanley v. City of Dalton, Ga.*, 219 F.3d 1280, 1296 (11th Cir. 2000) (finding that

defendant was entitled to qualified immunity when his actions were *indisputably* motivated by lawful considerations); see *also Foy v. Holston*, 94 F.3d 1528, 1535 (11th Cir. 1996) (concluding that defendants were entitled to qualified immunity because the record showed *indisputable* and sufficient lawful motivations).

Although Darr would be entitled to qualified immunity on Plaintiffs' gender discrimination claims if there was *indisputable* evidence that his decisions were motivated at least in part by lawful considerations, there is no such indisputable evidence in this case. *Stanley*, 219 F.3d at 1296; *Foy*, 94 F.3d at 1535. Here, Darr presents evidence, which if believed by the jury, could support his same decision defense; but that evidence does not *indisputably* establish that lawful reasons existed and that Darr was in fact motivated, even in part, by these reasons. The record does not support an indisputable conclusion that Shafer was even arguably more qualified than Tompkins or Wynn for the captain position. Nor does the record indisputably establish that other "exempt" officers were treated the same as Ezell and denied the accrual of comp time while they were in exempt status. Moreover, a reasonable jury could find that the only reason these decisions were made was gender-based, and if a jury made that finding, it is clear that any reasonable sheriff would have known that such discrimination is unlawful. Viewing all the evidence in the light most favorable to Plaintiffs, the

record does not demonstrate that Darr is entitled to qualified immunity based on the same decision defense or mixed-motive grounds.  Darr's motion for summary judgment based on qualified immunity on Tompkins's and Wynn's denial of promotion claims and Ezell's comp time claim is denied.

### 2. Columbus's Liability for Darr's Decisions

It is well established that a local government can be held liable under § 1983 when its official policy or custom causes a constitutional violation.  *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403-04 (1997); *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).  An official's decision constitutes an official policy or custom if that official possesses "final policymaking authority" in the relevant subject matter.  *Scala v. City of Winter Park*, 116 F.3d 1396, 1397 (11th Cir. 1997). Final policymaking authority exists when an official's decisions are not constrained by official policies *and* are not subject to "meaningful administrative review."  *Id.* at 1399-1402 (discussing *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988) (plurality opinion)).

Columbus does not dispute that Darr made the decision to promote Shafer instead of Tompkins or Wynn and that Darr made the decisions regarding comp time for his officers.  It is also undisputed that Darr made these decisions as an official of the Columbus Consolidated Government.  Columbus disputes, however,

46

that Darr is the final decisionmaker for those employment decisions. Columbus contends that Darr is not the final decisionmaker because his decisionmaking is constrained by Columbus's official employment policies under the merit system and Fair Treatment Policy review process.

The only employment actions of the Sheriff that are subject to reversal under the merit system are termination, demotion, suspension, and fines. Any other employment actions may be subject to voluntary reconsideration by the Sheriff, but there is no meaningful review of those decisions. These unreviewable decisions include denials of promotions and refusals to allow the earning or use of comp time. Since these decisions are not subject to meaningful review, the Sheriff is the final decisionmaker for them. *Mandel v. Doe*, 888 F.2d 783, 792-94 (11th Cir. 1989). Accordingly, Columbus is not entitled to summary judgment on Tompkins's and Wynn's denial of promotion claims and Ezell's denial of comp time claim asserted pursuant to the Fourteenth Amendment and § 1983.

                              CONCLUSION

For the reasons explained in this Order, the Court denies Defendants' motion for summary judgment as to the following claims, which remain pending for trial: (1) Tompkins's and Wynn's failure to promote claims under Title VII against Columbus and under the Fourteenth Amendment and § 1983 against

Columbus and Darr; and (2) Ezell's comp time claim under Title VII against Columbus and under the Fourteenth Amendment and § 1983 against Columbus and Darr.  The Court otherwise grants Defendants' motion for summary judgment as to all other claims.

    IT IS SO ORDERED, this 12th day of June, 2013.

                                    S/Clay D. Land
                                    CLAY D. LAND
                              UNITED STATES DISTRICT JUDGE