IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

DONNA TOMPKINS and JOAN B.    *
WYNN,
                               *

    Plaintiffs,
                               *

vs.
                               *     CASE NO. 4:11-CV-93 (CDL)

JOHN DARR, *Individually and in*
*his Official Capacity as*    *
*Sheriff of Muscogee County*, and
COLUMBUS CONSOLIDATED    *
GOVERNMENT,
                               *

    Defendants.
                               *

O R D E R

    Today the Court must decide whether a jury verdict, which is supported by evidence presented at trial, matters.  In its verdict, the jury found that Sheriff John Darr purposefully discriminated against Lieutenant Donna Tompkins and Lieutenant Joan B. Wynn based on their gender when he did not promote them to the rank of captain.  This gender discrimination violates the law of the United States.  Plaintiffs maintain that such unlawful conduct has legal consequences, and they have now filed a motion seeking equitable relief (ECF No. 108).  Defendants, seemingly suggesting that such conduct should have no legal consequences, oppose the motion.  For the reasons described in the remainder of this Order, Plaintiffs' motion is granted in part and denied in part as follows.

The Court grants the following equitable relief to Lt. Tompkins:

(1) Lt. Tompkins shall be promoted to the rank of captain in the Muscogee County Sheriff's Office by July 1, 2016 or within thirty days of the next captain vacancy, whichever occurs first, and she shall receive going forward from the date of her promotion the same level of compensation and benefits that she would have received had she been promoted to the captain position that is the subject of the present action.

(2) Lt. Tompkins shall receive front pay and benefits from July 1, 2014 until the date she is promoted to captain at the same level of compensation and benefits that she would have received had she been promoted to the captain position that is the subject of the present action.

(3) Lt. Tompkins, as a prevailing party in this action, shall recover her attorneys' fees and expenses in the amount of $271,974.87 from the Columbus Consolidated Government.

(4) The Court retains jurisdiction over this matter for purposes of enforcing the injunctive and equitable relief granted today.

The Court denies equitable relief to Lt. Wynn, finding that she would not have been promoted to captain even if Sheriff Darr had not been motivated by gender.

DISCUSSION

In its verdict, the jury specifically found in response to special interrogatories that gender was a motivating factor in Sheriff Darr's decision not to promote Lt. Tompkins and Lt. Wynn. The jury further found against Defendants on their same decision defense. Curiously, the jury did not award back pay or compensatory damages. Even though the jury declined to award such relief, the verdict supports the conclusion that Sheriff Darr purposefully discriminated against Lt. Tompkins and Lt. Wynn based on their gender when he denied them promotion to captain. Moreover, even though the evidence presented at trial did not demand this finding, the trial record certainly supports the verdict, and the Court refuses to disturb the jury's findings. This discriminatory conduct violates Title VII of the Civil Rights Act of 1964 and the Fourteenth Amendment to the United States Constitution. Sheriff Darr is legally responsible for his conduct pursuant to 42 U.S.C. § 1983. The Columbus Consolidated Government, as Plaintiffs' employer, is legally responsible for this discriminatory conduct under Title VII and pursuant to § 1983 because Darr was the final decisionmaker for Columbus regarding the denial of promotions.[1]

---

[1] Columbus has disputed that Sheriff Darr was the final decisionmaker for Columbus, but the Court rejected that argument at trial and found

It is clear that the use of gender as a motivating factor in employment decisions, such as denial of promotions, violates Title VII.  42 U.S.C. § 2000e-2(a)(1); *see also, e.g., Smith v. Horner*, 839 F.2d 1530, 1539 (11th Cir. 1988) (explaining that Title VII requires that employers not make promotion decisions based on race, sex, religion, color, or national origin).  It is also clear that for such violations, an employee may recover compensatory damages and equitable relief.  42 U.S.C. § 1981a(a)(1) (providing that compensatory damages for Title VII violations are recoverable under 42 U.S.C. § 1981(b) in addition to the equitable relief provided by 706(g) of Title VII at 42 U.S.C. § 2000e-5(g)(1)).  It is the jury's role to determine whether illegal discriminatory conduct occurred and whether an employee should recover compensatory damages.  It is the judge's role to determine whether equitable relief is appropriate.  42 U.S.C. § 2000e-5(g)(1); *Rivers v. Wash. Cnty. Bd. of Educ.*, 770 F.2d 1010, 1012 (11th Cir. 1985) (per curiam) (noting a district court's "broad, equitable discretion to grant any equitable relief it deems appropriate" to remedy unlawful employment discrimination).  Equitable relief may be appropriate even if a jury does not award compensatory damages.  The types of

as a matter of law based on the trial record that he was the City's final decisionmaker for these decisions.  As a practical matter, this issue is irrelevant to the relief the Court grants today because the final decisionmaker issue only applies to Plaintiffs' § 1983 claims against Columbus, and the relief granted today is warranted under Title VII.

equitable relief to be considered include injunctive relief, back pay, and front pay in lieu of injunctive relief. 42 U.S.C. § 2000e-5(g)(1); *see also E.E.O.C. v. W & O, Inc.*, 213 F.3d 600, 618-19 (11th Cir. 2000) (holding that front pay is equitable relief to be decided by the trial judge, not the jury). Injunctive relief may include instatement to the position which the employee was discriminatorily denied. *See Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1185, 1189 (11th Cir. 2010) (affirming district court's permanent injunction ordering employer to promote plaintiff "to fill the next vacancy in the position of Division Engineer").

The present action is complicated by the fact that both Plaintiffs sought one captain position. Therefore, only one of them could have received the promotion. In deciding what equitable relief is appropriate to make the parties whole, the Court must determine, if possible, which Plaintiff likely would have received the promotion had gender not been a motivating factor.

**I.   Back Pay**

For purposes of Title VII, back pay is considered equitable relief and not an item of compensatory damages. 42 U.S.C. § 1981a(b)(2); *Landgraf v. USI Film Prods.*, 511 U.S. 244, 253 (1994). Generally, whether back pay should be awarded and the amount to be awarded are ultimately to be decided by the judge

and not the jury. *Brown*, 597 F.3d at 1184. However, the parties can agree to have the issue of back pay decided by the jury. Fed. R. Civ. P. 39(c)(2). And that is what happened in this case. The final Pretrial Order makes it clear that the parties consented to having the jury decide the issue of back pay. *See generally* Pretrial Order Ex. D, Pls.' Proposed Verdict Form/Special Interrogs., ECF No. 81-4. Generally, the final pretrial order shall not be amended except to prevent manifest injustice. Pretrial Order 23, ECF No. 81; *see also Walker v. Anderson Elec. Connectors*, 944 F.2d 841, 844 (11th Cir. 1991) (citing Fed. R. Civ. P. 16(e)). In addition to consenting to the jury deciding this issue in the Pretrial Order, Plaintiffs' subsequent conduct confirmed that the issue would be decided by the jury, and no indication was ever given before the jury returned its verdict that the jury's verdict on this issue would only be deemed advisory. *See Whiting v. Jackson State Univ.*, 616 F.2d 116, 123 (5th Cir. 1980) ("By failing to object [to the jury charge], the parties agreed that the jury's verdict on the claims for [back pay] equitable relief was to have the same effect as if a right to a jury trial existed.") (citing Fed. R. Civ. P. 39(c)).[2] No manifest injustice has been demonstrated by the consensual submission of this issue to the jury. The Court

_____

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

finds that the parties have waived any right to have that issue decided by the judge at this stage of the proceedings and that they are bound by the jury verdict unless there is insufficient evidence to support the jury's finding.  The Court finds that while it may be reasonable to conclude that Plaintiffs suffered some back pay losses for the denial of the promotions, the evidence did not demand a finding that Plaintiffs had proven the amount of those losses by a preponderance of the evidence.[3] Accordingly, the Court finds that an award of back pay is not appropriate given the jury's verdict.

## II.  Equitable and Injunctive Relief

The basic purpose of equitable relief under Title VII is to make the employee whole—to restore the employee to the position the employee would have occupied had she not been the victim of unlawful discrimination.  *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418-21 (1975); *Nord v. U.S. Steel Corp.*, 758 F.2d 1462, 1470 (11th Cir. 1985).  When an employee is denied a promotion because of gender, the only way to make that employee completely whole is to appoint her to the position that she was denied. *Nord*, 758 F.2d at 1473 ("Title VII claimants are . . . presumptively entitled to reinstatement under the 'make whole' policy.").  Defendants' argument that providing such relief is

---

[3] In fact, the Court recalls the evidence on the *amount* of back pay losses to have been, in layman's terms, skimpy.  Of course, no one knows why the jury refused to award back pay, and such speculation is not relevant to the Court's rulings today.

inconsistent with the jury verdict in this case is unpersuasive. Defendants argue that the jury found that Plaintiffs "were not entitled to any recovery whatsoever" and that the Court should likewise grant no relief.   Defs.' Resp. to Pls.' Motion for Equitable Relief 8-9, ECF No. 115.   This argument ignores the undisputed fact that the jury never considered whether Defendants should be ordered to promote Plaintiffs or award them front pay in lieu of a promotion.   Only the Court has the authority to grant such relief.   Furthermore, the granting of such relief would not be inconsistent with the jury verdict, which clearly found that Sheriff Darr was motivated by gender when he made the promotion decision at issue.   Defendants do make a strong argument that promoting either Plaintiff immediately would create undue disruption in the Sheriff's Office.   Under the present command structure, there are no vacant captain positions.   Furthermore, it would not be appropriate to displace the person who actually received the promotion. *See Walters v. City of Atlanta*, 803 F.2d 1135, 1149 & n.13 (11th Cir. 1986) (explaining that "bumping" is a remedy to be used sparingly, only in extraordinary circumstances). Therefore, a new captain position, with presumably new duties, would have to be created if the Court ordered either Plaintiff to be promoted immediately.   The Court finds that the impracticability of such a remedy and the disruption caused by

it outweigh the need for such a remedy, particularly when the Court can accomplish the "make whole" objective in other ways. *See, e.g.*, *Nord*, 758 F.2d at 1473 (stating that front pay may be awarded in lieu of instatement).

Evidence was presented that at least one captain position will likely become vacant due to retirements by July 1, 2016. Requiring promotion of either Plaintiff to an open position would not present the same practical problems and disruption issues associated with an immediate promotion. The Court understands that such relief may not be the ideal way to make employment decisions, but Defendants did bring this on themselves, and inconveniences caused by their own conduct cannot stand in the way of awarding equitable relief to remedy unlawful discrimination. The Court further finds that some front pay in the interim before the effective date of the promotion is likewise necessary as part of any "make whole" remedy.

The unique issue presented in this action is how the Court can provide the appropriate "make whole" relief through mandated promotion and front pay when both Plaintiffs were applying for the same single position and when it is undisputed that only one of them could have received the promotion even if there had been no unlawful discrimination. If the Court granted both Plaintiffs this equitable relief, one of them would necessarily

be better off than she would have been had the unlawful discrimination not occurred. *See United States v. City of Miami*, 195 F.3d 1292, 1301 (11th Cir. 1999) (explaining that award inappropriately placed officers in a "substantially better position" than they would have occupied absent the discrimination "by dramatically inflating their actual chances of obtaining only one of two available positions"). Splitting a front pay award between the two Plaintiffs has the same effect: the Plaintiff who would not have been chosen to fill the position anyway would be better off than she would have been without the discrimination, and the other Plaintiff who likely would have been chosen would still be worse off due to the discrimination after receiving a "make-half" remedy. Thus, this pro rata approach does not achieve the goal of making the victim of the discrimination whole.

The Court recognizes that in some cases it may be impossible for a Court to determine which applicant likely would have been chosen for the position had discriminatory animus not been a motivating factor, and in those cases, it may be appropriate as a matter of equity to use a pro rata approach. *See City of Miami,* 195 F.3d at 1299-1300 (finding that pro rata sharing of damages among class of employees may be appropriate when it cannot be determined "after reasonable effort" which candidates would have been promoted). But this is not such a

case. The evidence presented at trial clearly established that Lt. Tompkins likely would have received the promotion had gender not been a motivating factor in Sheriff Darr's decision. Sheriff Darr testified at trial that Lt. Tompkins was his number two choice. And the commander of the jail, who is the immediate supervisor for the captain position at issue and is on the command staff, testified that Lt. Tompkins was his number two choice as well, describing her as an "awesome" deputy. While Lt. Wynn may have also been qualified for the position, she was not more qualified than Lt. Tompkins, and the overwhelming evidence at trial established that had gender not motivated Sheriff Darr, Lt. Tompkins would have received the promotion. Therefore, Lt. Tompkins is entitled to equitable relief but Lt. Wynn is not. *See Nord,* 758 F.2d at 1473 n.11 (recognizing that remedy should not put plaintiff in better position than she would have occupied absent the discrimination).

To make Lt. Tompkins whole, the Court orders a combination of equitable relief that includes eventual guaranteed promotion to captain with front pay in the interim. Specifically, Defendants shall promote Lt. Tompkins to the rank of captain by July 1, 2016 or within thirty days of the next captain vacancy, whichever occurs first. The Court further orders that she shall receive going forward from the date of her promotion the same level of compensation and benefits that she would have received

11

had she been promoted to the captain position that is the subject of the present action. By delaying the promotion date, the Court finds that Defendants will not be unreasonably burdened or disrupted in the operation of the Sheriff's Office. The Court, however, is concerned that a delayed promotion will not make Lt. Tompkins whole. This delay benefits Defendants to Lt. Tompkins's detriment. Therefore, the Court finds that Lt. Tompkins should receive front pay in the interim. Accordingly, Lt. Tompkins shall receive front pay and benefits from July 1, 2014 until the date she is promoted to captain at the same level of compensation and benefits that she would have received had she been promoted to the captain position that is the subject of the present action. The Court chooses the starting date for the front pay based on the beginning of Defendants' fiscal year to allow Defendants to budget for the increased and perhaps unexpected expense. While this delay also diminishes the full accomplishment of the Court's goal to make Lt. Tompkins whole, the Court finds it is appropriate and equitable under all of the circumstances. Because Lt. Tompkins remains employed with Defendants, albeit at a lower rank, the Court finds that a lump sum front pay award is not necessary to make her whole. Instead, Defendants shall be required to pay the front pay award as part of regular payroll. It is the Court's intention that during this interim period, she will simply be paid as if she

had received the captain position and her regular paycheck and benefits should reflect that.   Providing this equitable relief in this manner also gives Defendants the opportunity to discontinue the front pay aspect of the award by promoting her to captain sooner than the Court has ordered should they choose to do so.   The Court also makes it clear that the Court's Order does not guarantee Lt. Tompkins life tenure, nor does it excuse her from complying with all legitimate employment rules, policies and regulations.   She should be treated the same as if she were promoted to captain without the aid of a Court order, including being subject to appropriate discipline and adverse employment action if necessary.

The Court finds that no other equitable relief is necessary to "further the goals of ending illegal discrimination and rectifying the harm it causes." *Nord*, 758 F.2d at 1473-74 (internal quotation marks omitted).   Therefore, the Court denies Plaintiffs' request that the Court direct Defendants to revise their promotion policies.   The Court is convinced that the outcome of this litigation provides sufficient incentive for Defendants to make sure that their personnel policies effectively address the prohibition against unlawful discriminatory hiring and promotion practices.

## III. Attorneys' Fees and Expenses

A prevailing party is entitled to recover her attorneys' fees and litigation expenses under Title VII. 42 U.S.C. §§ 1988(b), 2000e-5(k). To be deemed a prevailing party, the litigation must have achieved some material alteration of the legal relationship between the parties. *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989). In light of the jury's verdict and the relief granted by the Court, it is clear that Lt. Tompkins is a prevailing party. She therefore is entitled to recover her attorneys' fees and expenses. Although the jury did find that Lt. Wynn was subjected to unlawful discrimination, that finding alone does not result in a material alteration of the legal relationship between Lt. Wynn and Defendants. *See Walker*, 944 F.2d at 847 (explaining that mere jury finding that plaintiff's rights had been violated did not tangibly alter any legal relationships); *Canup v. Chipman-Union, Inc.*, 123 F.3d 1440, 1442 (11th Cir. 1997) (clarifying that obtaining judgment without any monetary or equitable relief did not alter relationship between parties). Accordingly, Lt. Wynn is not entitled to recover her fees and expenses.

The starting point for calculating a reasonable fee is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S.

424, 433 (1983); *accord Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).   The resulting product is the lodestar, and there is a strong presumption that the lodestar figure represents a reasonable fee.   *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010).

A.   Hours Reasonably Expended

The Court will first determine the number of hours reasonably expended on the case.   Fee applicants must exercise billing judgment.   *Hensley*, 461 U.S. at 434.   In other words, fee applicants "must exclude from their applications 'excessive, redundant, or otherwise unnecessary [hours,] which are hours 'that would be unreasonable to bill to a client and therefore to one's adversary.'"   *Am. Civil Liberties Union v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999) (alteration in original) (quoting *Hensley*, 461 U.S. at 1939-40 and *Norman*, 836 F.2d at 1301). "[A] lawyer may not be compensated for hours spent on activities for which he would not bill a client of means who was seriously intent on vindicating similar rights[.]"   *Norman*, 836 F.3d at 1301.   Furthermore, "[w]here the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee."   *Hensley*, 461 U.S. at 440; *accord Norman*, 836 F.2d at 1302.

In this case, the Court is persuaded that counsel has exercised sound billing judgment.  The tasks for which counsel seeks compensation were reasonably necessary to represent Lt. Tompkins on her claim.  Counsel painstakingly made reductions to exclude time spent on claims other than Lt. Tompkins's failure to promote gender discrimination claim.  Although some of that time also related to Lt. Wynn's gender discrimination claim, the Court finds that the time spent on both claims is not significantly more than the time spent solely on Lt. Tompkins's claim.  Having reviewed the materials submitted in support of counsel's claim for recovery of attorneys' fees, the opposing arguments made by Defendants' counsel, and the explanation presented at the hearing on this issue, the Court finds that the following hours were reasonably spent by counsel on Lt. Tompkins's claims:[4]

| | |
|---|---|
| Edward D. Buckley | 143.3 hours |
| Cheryl B. Legare | 470.90 hours |
| Steven E. Wolfe | 19 hours |
| Justin M. Scott | 81.15 hours |
| Fatisha Martinez | 11 hours |
| Joel Tucker | 6.15 hours |
| Pam Rymin | 260.3 hours[5] |

---

[4] These hours include time spent on the post-trial proceedings relating to Lt. Tompkins's claim as follows: Buckley, 13.3; Legare, 45.6; and Rymin, 2.5.

[5] This amount is 10 hours less than the amount submitted in Plaintiffs' first application.  At the hearing, Plaintiffs' counsel conceded that

B.   Reasonable Hourly Rate

The other component of the lodestar calculation is the reasonable hourly rate.   "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299.   Here, the relevant market is Columbus, Georgia because that is "where the case [wa]s filed." *Barnes*, 168 F.3d at 437 (internal quotation marks omitted).   Plaintiff has the burden to produce "satisfactory evidence that the requested rate is in line with prevailing market rates." *Norman*, 836 F.2d at 1299.   The evidence should show that the claimed rates "were charged in similar cases for similar clients by lawyers of similar skill, experience and reputation." *Id.* at 1305.   "[T]he best information available to the court is usually a range of fees set by the market place, with the variants best explained by reference to an attorney's demonstrated skill." *Id.* at 1301. What a lawyer charges his paying clients "is powerful, and perhaps the best, evidence of his market rate; that is most likely to be what he is paid as determined by supply and demand." *Dillard v. City of Greensboro*, 213 F.3d 1347, 1354-55

---

this reduction should be made because it related to time spent solely on Terri Ezell's voluntarily dismissed claim.

(11th Cir. 2000) (per curiam) (internal quotation marks omitted).

Plaintiffs' counsel submits that the following hourly rates are reasonable: $450 per hour for lead attorney Edward D. Buckley; $350 per hour for lead attorney Cheryl B. Legare; $350 per hour for attorney Steven Wolfe; $275 per hour for associate attorney Justin M. Scott; and $125 per hour for paralegals Fatisha Martinez, Joel Tucker, and Pam Rymin. Plaintiffs' counsel contends that these rates, which are reduced slightly from their typical Atlanta rates, are the prevailing market rates in Columbus, Georgia. In support of this contention, they have submitted the declarations of their four attorneys, one Columbus attorney, and one Atlanta attorney. Defendants contend that these rates are too high and do not reflect the prevailing rate in Columbus. Defendants presented the declaration of three Columbus attorneys, including their own attorney, and one Macon attorney.

Based on evidence before the Court and the Court's own experience, the Court concludes that a reasonable hourly rate for attorneys (1) with skill, experience and reputation comparable to that of Plaintiffs' attorneys, (2) practicing in Columbus, Georgia, and (3) representing a plaintiff in an employment discrimination case against a municipality is between $250 and $350. The Court finds that an hourly rate of $350 is

reasonable for Mr. Buckley's work on this case, an hourly rate of $300 is reasonable for Ms. Legare and Mr. Wolfe's work on this case, and an hourly rate of $250 is reasonable for Mr. Scott's work on this case.  The Court finds that $100 per hour is a reasonable hourly rate for the paralegals' work.

### C.   Calculation of the Lodestar

The lodestar is $245,157.50 summarized as follows:

| | | | |
|---|---|---|---|
| Buckley | 143.3 | $350/hr | $ 50,155.00 |
| Legare | 470.90 | 300 | 141,270.00 |
| Wolfe | 19 | 300 | 5,700.00 |
| Scott | 81.15 | 250 | 20,287.50 |
| Martinez | 11 | 100 | 1,100.00 |
| Tucker | 6.15 | 100 | 615.00 |
| Rymin | 260.3 | 100 | 26,030.00 |

Defendants contend that after the Court calculates the lodestar, the Court should make an "across the board reduction to account for the lack of success at trial."  Defs.' Resp. to Pls.' Mot. for Attys' Fees 15, ECF No. 116.  In support of this argument, Defendants contend that Lt. Tompkins achieved only a "moral victory" based on the jury verdict.  As discussed above, however, Lt. Tompkins has been granted significant equitable relief, and the Court declines to reduce the lodestar.

### D.   Expenses

"[A]ll reasonable expenses incurred in case preparation" or during litigation "may be taxed as costs under [42 U.S.C. §] 1988."  *Dowdell v. City of Apopka, Fla.*, 698 F.2d 1181, 1192

(11th Cir. 1983) (noting that travel, telephone, and postage expenses are normally recoverable). The standard of reasonableness depends on "that which is appropriate in the context of the attorney-client relationship, the substantive and procedural nature of the case, and the climate in which the litigation is conducted." *Id.*

Lt. Tompkins sought a total of $27,070.45 for out-of-pocket expenses in the initial request. At the hearing, counsel acknowledged that $154.48 for travel and 10% of the $986.00 photocopy bill should be reduced because those expenses relate solely to Terri Ezell's claim. The Court finds that after these reductions, the claim for expenses is reasonable and necessary for Lt. Tompkins's gender discrimination failure to promote claim. Accordingly, Lt. Tompkins is awarded expenses in the amount of $26,817.37.

INJUNCTION

Based on the foregoing, the Court orders Muscogee County Sheriff John Darr and the Columbus Consolidated Government to do the following:

(1) Lt. Tompkins shall be promoted to the rank of captain in the Muscogee County Sheriff's Office by July 1, 2016 or within thirty days of the next captain vacancy, whichever occurs first, and she shall receive going forward from the date of her promotion the same level of compensation and

20

benefits that she would have received had she been promoted to the captain position that is the subject of the present action.

(2)  Lt. Tompkins shall receive front pay and benefits from July 1, 2014 until the date she is promoted to captain at the same level of compensation and benefits that she would have received had she been promoted to the captain position that is the subject of the present action.

The Court shall retain jurisdiction over this action and the parties for the purpose of enforcing this injunctive relief. In addition to this injunctive relief, Lt. Tompkins shall recover $271,974.87 from the Columbus Consolidated Government for her attorneys' fees and expenses.

## CONCLUSION

Federal judges are generally ill-equipped to act as personnel directors.  When their decisions affect how local elected officials manage their offices, intrusive federal involvement raises additional jurisprudential concerns.  These concerns require caution when formulating court ordered equitable relief.  But caution does not mean inaction, particularly when such relief is necessary to remedy violations of the Nation's antidiscrimination laws.  Abstention under such circumstances would be a dereliction of duty.  Federal courts are often the final destination for victims of unlawful

discrimination.   If the goals of ending illegal discrimination and rectifying the harm it causes are to be accomplished, the opportunity for obtaining meaningful relief must be available here.   Accordingly, after careful consideration, the Court finds the relief ordered today not only authorized under federal law but absolutely necessary.

    IT IS SO ORDERED, this 27th day of November, 2013.

S/Clay D. Land
_____
CLAY D. LAND
UNITED STATES DISTRICT JUDGE